## W. A. SHEAFFER PEN CO. v. LUCAS, Commissioner of Internal Revenue.

### No. 4838.

Court of Appeals of District of Columbia.
Argued April 9, 1930.
Decided May 5, 1930.

Laurence Graves, of Washington, D. C., and E. H. Pollard, of Fort Madison, Iowa, for appellant.

G. A. Youngquist, Asst. Atty. Gen.. and Mabel W. Willebrandt, former Asst. Atty. Gen., C. M. Charest, V. J. Heffernan. and

Sewall Key, all of Washington. D. C., and Morton P. Fisher, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decision of the Board of Tax Appeals involving income and excess profits taxes for the period from January 8, 1918, to December 31, 1918, in the sum of $11,804.63, and for the calendar year 1919 in the sum of $18,545.72.

It appears that the petitioner, W. A. Sheaffer Pen Company, a Delaware corporation, with its principal office at Ft. Madison, Iowa, is engaged in the manufacture and sale of fountain pens. W. A. Sheaffer, the inventor of the pen, on April 11, 1913, incorporated the W. A. Sheaffer Pen Company under the laws of the state of Iowa. The Iowa corporation became the owner of the Sheaffer patents. The capital stock was increased, until in 1917 there were outstanding 2,239 shares of common stock, at the par value of $100 each, and also 546 shares of nonvoting preferred stock of $100 par value.

The business of the corporation expanded so rapidly that it became necessary to procure additional capital. It was accordingly decided, at a stockholder's meeting on December 15, 1917, to dispose of all of the assets of the Iowa corporation to a new corporation of the same name to be organized under the laws of the state of Delaware. It was provided that the preferred stockholders were to receive preferred stock, dollar for dollar, in the new corporation, and the common stockholders were to receive two shares of stock in the new corporation for one of the old, and no stock of the new company was to be sold for less than 90 cents on the dollar par value net to the corporation.

The Delaware corporation was organized, and on January 14, 1918, the transfer of the stock and assets from the Iowa corporation was effected. Under the terms of the agreement, the Delaware corporation agreed, after selling $200,000 of its unissued stock, to sell on behalf of the stockholders of the Iowa corporation so much of their stock in the new corporation as might be deposited for that purpose within a specified time, the stock to be sold at 90 cents on the dollar net to the stockholders. The $200,000 of treasury stock was then sold, and, when a sale of one-half of the stock held by the former stockholders of the Iowa corporation was made, there remained less than 40 per cent. of the stock of the new corporation in the hands of the former stockholders of the Iowa corporation. It was held by the Board that, for the purpose of determining appellant's invested capital, the assets received by it must be given no greater value than would have been allowed for such assets in computing the invested capital of the Iowa corporation.

The case turns upon the interpretation to be placed upon section 331 of the Revenue Act 1918, 40 Stat. 1057, which provides as follows: "In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation."

That this section of the statute includes the reorganization of a corporation, and that the word "control," as used therein, when applied to a corporation, relates to its control by its stockholders, is sustained in Symington-Anderson Co. v. Commissioner of Internal Revenue, 59 App. D. C. 76, 33 F. (2d) 372. The application of the statute is likewise emphasized from the fact that the control of the reorganized corporation (the Delaware corporation) remained in the same persons that had controlled the Iowa corporation. The plan of reorganization contemplated the formation of the Delaware corporation to take over the assets of the Iowa corporation and exchange therefor two shares of the common stock of the former corporation for one share of the latter and an equal number of shares of preferred stock in the Delaware corporation that were held in the Iowa corporation. It also contemplated that,

after the transfer of the assets, $200,000 par value of the common stock in the Delaware corporation was to be sold, and after the sale of this stock, the stockholders of the old corporation, who had by the transfer become the stockholders of the new, had the privilege of depositing for sale, within a limited time, such of their stock in the new corporation as they might desire to sell on the terms agreed upon, 90 per cent. of its par value.

While it is true that this agreement was made on the same day that the transfer of assets and stock from the Iowa corporation was made to the Delaware corporation, the sale of the treasury stock, and stock to be deposited by the stockholders, was to be accomplished as a future activity of the Delaware corporation, and not of the disorganized Iowa concern. It is to be observed also that the stock belonging to the stockholders that might be deposited for sale could not be sold until after the treasury stock was disposed of; hence it is clear that more than 50 per cent. of the stock of the reorganized corporation remained in the same persons that held the stock of the former corporation.

The Revenue Act of 1928, § 112(b)(3), 45 Stat. 791, 816 (26 USCA § 2112), fixing the valuation of stock for the purpose of taxation in case of a transfer by a corporation of all or part of its assets to another corporation, provides: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." The court may look properly to subsequent legislation as an aid in statutory construction. Joy Floral Co. v. Commissioner, 58 App. D. C. 277, 29 F.(2d) 865, 868.

In the reasonable interpretation of the statute, when the exchange took place on January 14, 1918, all of the issued stock of the new corporation was held by the stockholders of the old, and the contemplated sale of stock in the future, to be made through the agency of the regular traveling salesman of the company, would of necessity be slow; hence it would be a strained interpretation to hold that during this period the control remained in the old corporation. While it is elementary that the assets and property of a corporation are the property of the corporation, as a corporate entity, and not of its stockholders, it may, with propriety, as contended by appellant, be said that the assets and property of the Iowa corporation passed on January 14, 1918, to the Delaware corporation; but it is equally elementary that the control of a corporation is in its stockholders, and it is control that the statute is here dealing with. Inasmuch, therefore, as more than 50 per cent. of the property of the Delaware corporation, at the time the assets were transferred to it, remained in control of the same persons as controlled the property of the Iowa corporation, then it must be held under the statute that none of the assets transferred or received from the Iowa corporation shall be allowed a greater value than would have been allowed in computing the invested capital of that corporation if no transfer had been made.

The decision of the Board of Tax Appeals is affirmed.